CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
C. J. POTTER, IV. ESQ.
Nevada Bar No. 13225
POTTER LAW OFFICES
1125 Shadow Lane
Las Vegas, Nevada 89102
Ph: (702) 385-1954
Fax: (702) 385-9081
cpotter@potterlawoffices.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ADAM BROOKS,

       Plaintiff,

vs.

CITY OF HENDERSON;
CHIEF JAMES WHITE, individually
and in his capacity as Interim Chief of
the Henderson Police Department;
OFFICER JOSEPH W. EBERT,
individually; DOES 1 through 10,
inclusive,

       Defendants.
_____/

Case No: 2:14-cv-374-GMN-GWF

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

      COMES NOW, Plaintiff, ADAM BROOKS, by and through his attorneys of record, CAL
J. POTTER, III, ESQ. and C. J. POTTER, IV, ESQ. of POTTER LAW OFFICES, and hereby
Opposes Defendants' Motion to Dismiss.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

This Opposition is based upon the pleadings and papers on file herein, the points and authorities attached hereto, and any oral arguments the Court may entertain at the hearing of this matter.

DATED this 28th day of July, 2014.

POTTER LAW OFFICES

By   /s/ Cal J. Potter, III, Esq.
CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
C. J. POTTER, IV, ESQ.
Nevada Bar No. 13225
1125 Shadow Lane
Las Vegas, Nevada 89102
*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTS

**A.    INTRODUCTION**

This is a civil rights action filed by Plaintiff Adam Brooks ("Mr. Brooks" or "Plaintiff"), against the City of Henderson and individual Defendants White and Ebert. This case arises out of an incident in which the Defendants violated Mr. Brooks' civil rights by unlawfully arresting Mr. Brooks for "impersonating an officer". At all times relevant to this actions Mr. Brooks was duly licensed, by the State of Nevada, as a Bail Enforcement Agent.

**B.    FACTS ALLEGED IN PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Adam Brooks was arrested, on June 14, 2012, subsequent to the issuance of a warrant which relied upon an affidavit comprised of false statements which were made knowingly and intentionally, or with a reckless disregard for the truth by Defendant Ofc. Ebert. (Doc. 8, ¶ 13). Defendant Ebert failed to contact all witnesses to the alleged incident. (Doc. 8, ¶ 14). Had Defendant Ebert contact witnesses to the incident he would have learned that four separate individuals, whom were present at the location of the alleged incident, stated that Mr. Brooks did not identify himself as a police officer. (Doc. 8, ¶ 15).

. . .

Additionally, Defendant Ebert falsely claimed, in his affidavit, that Mr. Brooks was not in lawful possession of a police badge. (Doc. 8, ¶ 16). Contrary to Defendant Ebert's false assertion, as a retired police officer, Brooks was lawfully in possession of the subject badge. (Doc. 8, ¶ 17). Likewise, Defendant Ebert falsely stated, in his affidavit, that Henderson police took a badge that was not authorized by the department. (Doc. 8, ¶ 19). In actuality, the badge was authorized by the Department. (Doc. 8, ¶ 20).

Defendant Ebert's affidavit also falsely states that the badge was taken from Mr. Brooks during a traffic stop. (Doc. 8, ¶ 21). In actuality the badge was taken from Mr. Brooks approximately fifteen minutes later while Mr. Brooks was eating at a restaurant. (Doc. 8, ¶ 22). Defendant Ebert failed to conduct an independent investigation, or to provide facts or independent professional opinions to support his unilateral conclusions. (Doc. 8, ¶ 23). Additionally, Defendant Ebert, in his affidavit, falsely stated that the fact Brooks was in lawful possession of a Brooks' retired police officer's badge, gave weight to alleged statements over the phone. (Doc. 8, ¶ 18).

There was no basis for probable cause to arrest Adam Brooks as a result of Ofc. Ebert's false affidavit. (Doc. 8, ¶ 24). Notwithstanding the lack of probable cause, on June 14, 2012, Plaintiff was unlawfully arrested and falsely imprisoned as a result of Ofc. Ebert's false Affidavit and Chief White, Does 1-10, and HPD's failure to properly investigate police reports and its failure to promulgate and enforce appropriate policing policies. (Doc. 8, ¶ 25).

1.      **Unconstitutional policies of the City of Henderson implemented and enforced by Defendant White**

In his Amended Complaint, Plaintiff specifically alleges that Defendants acted with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff and all persons similarity situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things.

a.      Filing factually inaccurate and/or factually incorrect affidavits for arrest warrants that violates the holding of Franks v. Delaware and its progeny;

3

b.      Failing to adequately train, supervise, and control deputies, civilian employees or volunteers in the arts of law enforcement;

c.      Failing to adequately discipline deputies or civilian employees in the belief that they can violate the rights of persons such as the Plaintiff in this action with impunity, and that such conduct will not adversely benefits;

d.      Condoning and encouraging Officers and civilian employees in the belief that they can violate the rights of persons such as the Plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits. (Doc. 8, ¶ 11).

Moreover, Plaintiff also alleged that The City of Henderson, Chief White, and Does 1-10, ordered, authorized, acquiesced in, tolerate, or permitted other defendants herein to engage in the unlawful and unconstitutional violations based either on a deliberate plan by defendants or on defendant's deliberate indifference, gross negligence, or reckless disregard ti the safety, security, and constitutional and statutory rights of the Plaintiff. (Doc. 8, ¶ 12).

Plaintiff further alleged that Defendants maintained the following policies, practices and customs: To tolerate the failure to adequately investigate police reports. (Doc. 8, ¶ 33).  To tolerate and allow the unlawful arrests of citizens. (Id.). To fail to use appropriate and generally accepted law enforcement procedures in handling citizen complaints. (Id.). To deprive citizens of their right to petition their government about their government. (Id.). To deny citizens their right to Due Process and other constitutional rights as set forth herein. (Id.). To cover-up violations of constitutional rights by any or all of the following: (i). By failing to properly investigate and/or evaluate complaints; (ii) By ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; (iii) By allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding

4

and/or concealing material information. (Id.). To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and, To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints. (Id.).

## II.

## ARGUMENT

### A.   STANDARD OF REVIEW FOR MOTIONS TO DISMISS

A court is required to construe complaints under the Civil Rights Act liberally.  *See*, Morrison v. Jones, 607 F.2d 1269 (1979). The Court's review of a 12(b) motion is based strictly on the contents of the Complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  The Court must accept the allegations as true and construe them in the light most favorable to the Plaintiff.  Abramson v. Brounstein, 897 F.2d 389, 391 (9th Cir. 1990).

A complaint should not be dismissed unless it appears beyond doubt the Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  The only elements which need to be present in order to establish a claim for damages under the Civil Rights Act are that the conduct complained of was engaged in under color of state law and that such conduct subjected the Plaintiff to the deprivation of rights, privileges or immunities secured by the Constitution of the United States.  Morrison v. Jones, 607 F.2d 1269 (1979) citing Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962).

In Morrison, *supra*, the court stated, "at this preliminary stage of the proceedings, we cannot say that [the Plaintiff] has failed to state a claim for relief based upon her constitutionally secured rights to procedural due process of law and her substantive familial rights that have long been considered the "basic civil rights of man." Id.  Though Morrison's amended complaint was inartfully drafted, the court stated, "[it] is required to construe complaints under the Civil Rights Act liberally." Id.

For a dismissal under 12(b)(6) to stand on appeal to the Ninth Circuit Court of appeals, it

1  must appear to a certainty that plaintiff would not be entitled to relief under any set of facts that

2  could be proved.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

3  **B.   PLAINTIFF'S COMPLAINT IS SUFFICIENTLY PLEAD PURSUANT TO FED R. CIV. PRO 8(A)**

4  **WITH FACTUAL BASIS TO WITHSTAND DEFENDANTS' MOTION TO DISMISS.**

5  _____Federal Rules of Civil Procedure ("FRCP) Rule 8(a) , General Rules of Pleading,

6  provides in *relevant* part:

7  (a) Claims for Relief.  A pleading which sets forth a claim for
   relief, whether an original claim, counter-claim, cross-claim, or

8  third-party claim, shall contain (2) a short and plain statement of
   the claim showing that the pleader is entitled to relief, and (3) a

9  demand for judgment for the relief the pleader seeks. Relief in the
   alternative or of several different types may be demanded.

10  (*Emphasis* Added)

11  Federal Rule of Civil Procedure 8(a)(2) requires only notice pleading containing "a

12  short and plain statement of the claim showing that the pleader is entitled to relief." Allied

13  Signal v. City of Phoenix, 182 F.3d 692 (9th Cir. 1999). This liberal pleading standard only

14  requires that "the averments of the complaint sufficiently establish a basis for judgment against

15  the defendant." Id., *citing*, Yamaguchi v. United States Dep't of the Air Force, 109 F.3d 1475,

16  1481 (9th Cir.1997).

17  Defendants are attempting to argue that a "heightened pleading" standard exists.

18  However, a Federal Court may not apply a heightened pleading standard for civil rights cases

19  and all civil rights actions are governed by the pleading requirements established by Fed. R.

20  Civ. P. 8.  The Supreme Court has stated that the common-law-developed heightened pleading

21  standard, which required a plaintiff's complaint to state with factual detail and particularity the

22  basis for the claim, cannot be reconciled with the Federal Rules' liberal system of notice

23  pleading.  *See*, Empress LLC v. City & County of San Francisco, 419 F.3d 1052, 1055 (9th Cir.

24  2005); Leatherman v. Tarrant County, 507 U.S. 163, 164 (1993).

25  The Ninth Circuit has addressed the Iqbal decision as it relates to the Supreme Court

26  scaling back supervisory liability under §1983 and Bivens claims. Al-Kidd v. Ashcroft, 580

27  F.3d 949, 965 (9th Cir.2009) ("Ninth Circuit identified four general situations in which

28  supervisory liability may be imposed: (1) for setting in motion a series of acts by others, or

6

knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others.").

C.    PLAINTIFF HAS ALLEGED "PLAUSIBLE" CLAIMS UNDER § 1983

State officials, sued in their individual capacities, are "persons" within the meaning of § 1983 and may be held personally liable for damages under 42 U.S.C. § 1983 based on actions taken in their official capacities. Hafer v. Melo, 502 U.S. 21, 112 S. Ct. 358 (1991). "To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).

A person deprives another "of a constitutional right, within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains] (emphasis added). Leer v. Murphy, 844 F.2d 628,633 (9th Cir. 1988) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Direct participation in commission of a constitutional deprivation is not the sole predicate for liability under Section 1983.  Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. Johnson, 588 F. 2d at 743-44.

In the case at hand, Defendants Ebert and White were acting in their respective capacities as Henderson Police Officers,  therefore each was acting under the color of law. Secondly, the Fourth Amendment guarantees the right to be free from arrests without probable cause. Morgan v. Woessner, 997 F.2d 1244 (9th Cir. 1993). Probable cause exists when the acts and

7

1  circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person

2  to believe that a suspect has committed, is committing, or is about to commit a crime.  U.S. v.

3  Puerta, 982 F.2d 1297, 1300 (9th Cir. 1992). In § 1983 cases, **the existence of probable cause**

4  **is generally a question of fact to be submitted to a jury.** McKenzie v. Lamb, 738 F.2d 1005,

5  1008 (9th Cir. 1984)(emphasis added).

6          For probable cause to exist to exist, the "facts and circumstances within the officers

7  knowledge (at the time of the arrest) must be sufficient to warrant a prudent person, or one of

8  reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is

9  committing or is about to commit the offense." Michigan v. DeFillippo, 443 U.S. 31 (1979). This

10  inquiry is necessarily fact-specific in each case.

11          In making the determination of probable cause, an officer may not choose to ignore

12  information that has been offered to him or her. . . Nor may the officer elect not to obtain easily

13  discoverable facts" Kingsland v. City of Miami, 369 F.3d 1210, 1219 (11th Cir. 2004), opinion

14  withdrawn and superseded on other grounds. For example in BeVier v. Hucal, parents sued a

15  police officer who arrested them, for child neglect. The Court found that the officer should have

16  made a further inquiry of witnesses at the time of arrest in which event he would have learned

17  facts that demonstrate no neglect had taken place. BeVier v. Hucal 806 F.2d 123 (7th Cir. 1986).

18          In the case at hand, Plaintiff has alleged that Defendant Ebert failed to contact all

19  witnesses to the alleged incident. (Doc. 8, ¶ 14). Additionally, had Defendant Ebert contact

20  witnesses to the incident he would have learned that four separate individuals, whom were

21  present at the location of the alleged incident, stated that Mr. Brooks did not identify himself as a

22  police officer. (Doc. 8, ¶ 15). Additionally, Defendant Ebert falsely claimed, in his affidavit,

23  that Mr. Brooks was not in lawful possession of a police badge. (Doc. 8, ¶ 16). Contrary to

24  Defendant Ebert's false assertion, as a retired police officer, Brooks was lawfully in possession

25  . . .

26  . . .

27  of the subject badge. (Doc. 8, ¶ 17). Likewise, Defendant Ebert falsely stated, in his affidavit,

28  that Henderson police took a badge that was not authorized by the department.  (Doc. 8, ¶ 19). In

actuality, the badge was authorized by the Department. (Doc. 8, ¶ 20).

Defendant Ebert's affidavit also falsely states that the badge was taken from Mr. Brooks during a traffic stop. (Doc. 8, ¶ 21). In actuality the badge was taken from Mr. Brooks approximately fifteen minutes later while Mr. Brooks was eating at a restaurant. (Doc. 8, ¶ 22). Defendant Ebert failed to conduct an independent investigation, or to provide facts or independent professional opinions to support his unilateral conclusions. (Doc. 8, ¶ 23). Additionally, Defendant Ebert, in his affidavit, falsely stated that the fact Brooks was in lawful possession of a Brooks' retired police officer's badge, gave weight to alleged statements over the phone. (Doc. 8, ¶ 18). There was no basis for probable cause to arrest Adam Brooks as a result of Ofc. Ebert's false affidavit. (Doc. 8, ¶ 24). Notwithstanding the lack of probable cause, on June 14, 2012, Plaintiff was unlawfully arrested and falsely imprisoned as a result of Ofc. Ebert's false Affidavit and Chief White, Does 1-10, and HPD's failure to properly investigate police reports and its failure to promulgate and enforce appropriate policing policies. (Doc. 8, ¶ 25).

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in favor of the Plaintiff, it is apparent that Plaintiff has alleged that Defendants were acting under the color of law and that Defendants arrested Plaintiff without probable cause. Consequently, at the pleading stage, Plaintiff has stated "plausible" claims for relief. Lastly, as noted above, In § 1983 cases, the existence of probable cause is generally a question of fact to be submitted to a jury. McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984). Therefore Defendant's Motion should be denied and Plaintiff should be permitted to proceed to discovery and prove his allegations.

**D.   PLAINTIFF HAS ALLEGED A "PLAUSIBLE" MONELL CLAIM**

A plaintiff can establish municipal liability under 42 U.S.C. § 1983 in one of three ways. Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992). "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." Id. "Second, the plaintiff may establish that the individual who

committed the constitutional tort was an official with 'final policy-making authority' and that the
challenge action itself thus constituted an act of official governmental policy." Id. (citing
Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)). "Third, the plaintiff may prove that
an official with final policy-making authority ratified a subordinate's unconstitutional decision or
action and the basis for it. Id. at 1346-47 (citing City of St. Louis v. Praprotnik, 485 U.S. 112,
127 (1988)).

### 1. Policy or Custom

A local government entity may be held liable pursuant to 42 U.S.C. § 1983 where the
alleged constitutional tort was inflicted in the execution of the entity's (1) policy or (2) custom.
Monell v. Dept. of Social Services, 436 U.S. 658, 690-91 (1978).

A policy or custom need not be a formally promulgated for purposes of § 1983, rather the
existence of a policy or custom may be inferred by the conduct. Henry v. County of Shasta, 132
F.3d 512, 519 (9th Cir. 1997). Additionally, existence of a policy or custom in a § 1983
municipal liability claim may be proven by prior conduct or post-event evidence. Larez v. Los
Angeles, 946 F.2d 630 (9th Cir. 1991).

In his Amended Complaint, Plaintiff specifically alleges that Defendants City of
Henderson, and its HPD, acted with deliberate indifference, gross negligence, and reckless
disregard to the safety, security, and constitutional and statutory rights of Plaintiff and all persons
similarity situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied
policies or practices of, among other things.

    a.   Filing factually inaccurate and/or factually incorrect affidavits for arrest
warrants that violates the holding of Franks v. Delaware and its progeny;

    b.   Failing to adequately train, supervise, and control deputies, civilian
employees or volunteers in the arts of law enforcement;

    c.   Failing to adequately discipline deputies or civilian employees in the
belief that they can violate the rights of persons such as the Plaintiff in this
action with impunity, and that such conduct will not adversely benefits;

    d.   Condoning and encouraging Officers and civilian employees in the belief

that they can violate the rights of persons such as the Plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits. (Doc. 8, ¶ 11).

Moreover, Plaintiff also alleged that The City of Henderson, Chief White, and Does 1-10, ordered, authorized, acquiesced in, tolerate, or permitted other defendants herein to engage in the unlawful and unconstitutional violations based either on a deliberate plan by defendants or on defendant's deliberate indifference, gross negligence, or reckless disregard ti the safety, security, and constitutional and statutory rights of the Plaintiff. (Doc. 8, ¶ 12).

Plaintiff further alleged that Defendants maintained the following policies, practices and customs: To tolerate the failure to adequately investigate police reports. (Doc. 8, ¶ 33).  To tolerate and allow the unlawful arrests of citizens. (Id.). To fail to use appropriate and generally accepted law enforcement procedures in handling citizen complaints. (Id.). To deprive citizens of their right to petition their government about their government. (Id.). To deny citizens their right to Due Process and other constitutional rights as set forth herein. (Id.). To cover-up violations of constitutional rights by any or all of the following: (i). By failing to properly investigate and/or evaluate complaints; (ii) By ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; (iii) By allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information. (Id.).To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and, To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints. (Id.).

Accepting all of the allegations concerning the foregoing policies, practices, and

customs, Plaintiff has stated a "plausible" <u>Monell</u> claim because the foregoing allegations demonstrate Henderson's *de facto* policies and an organizational custom and culture whereby the Henderson Police Department was deliberately indifferent to the constitutional rights of citizens. Consequently, Defendants Motion should be denied.

### 2.    Ratification

A single decision by a municipal official that ratifies unconstitutional conduct may be sufficient to trigger section 1983 liability if that official has "final policymaking authority." <u>Pembaur</u>, 475 U.S. at 481-83; <u>Gillette</u>, 979 F.2d at 1347.

The Ninth Circuit distinguishes between affirmative or deliberate conduct by a policymaker, which constitutes ratification, and mere acquiescence, which is insufficient to establish municipal liability by ratification. *See* <u>Gillette</u> *supra*.  In <u>Fuller v. City of Oakland</u>, 47 F.3d 1522, 1534 (9th Cir. 1995), the court found section 1983 municipal liability where a police chief ratified an unconstitutional investigation by expressly "approv[ing] both of the propriety of the investigation and the reports conclusions." *See*, <u>Christie</u>, 176 F.3d at 1240 (finding municipal liability via ratification where prosecutor "affirmatively approved" of alleged constitutional violations).

In this case Plaintiff specifically alleged that Defendant White ratified the unconstitutional conduct of Defendant Ebert. (Doc. 8, ¶¶ 33, 35-36). White's ratification of Ebert's unconstitutional arrest demonstrates that Ebert's conduct was not inconsistent with the City's actual customs, even when that conduct may have departed from published policies. Consequently, Defendant's Motion should be denied.

### E.    PLAINTIFF HAS ALLEGED A "PLAUSIBLE" THEORY OF SUPERVISORY LIABILITY AGAINST DEFENDANT WHITE

The United States Court of Appeals for the Ninth Circuit has never required a plaintiff to allege that a supervisor was physically present when the injury occurred. <u>Starr v. Baca</u>, 652 F.3d 1202, 1205-1206 (9th Cir. 2011). Rather, to be held liable the supervisor need not be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury. <u>Id</u>.

1    Supervisory liability is imposed against a supervisory official in his individual capacity

2    for his own culpable action or inaction in the training, supervision, or control of his

3    subordinates, for his acquiescence in the constitutional deprivations of which the complaint is

4    made, or for conduct that showed a reckless or callous indifference to the rights of others. Larez

5    v. Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

6    In this case, Plaintiff has alleged that Chief White has failed to enforce the laws of the

7    State of Nevada and the regulations of the Henderson Police Department pertaining to the need

8    for probable cause to detain and arrest an individual and that  Chief White is the policy maker

9    for the Henderson Police Department. (Doc. 8, ¶ 40) Moreover, Chief White denied Plaintiff his

10   First Amendment right to petition their government about their government. (Doc. 8, ¶41).

11   Chief White has the duty and responsibility to implement and enforce the guidelines,

12   procedures, and regulations of the Henderson Police Department and to train and supervise the

13   conduct of the employees of the Henderson Police Department to ensure they are properly

14   trained in the arrest and legal basis for the detention of individuals. (Doc. 8, ¶42). Chief White's

15   failure to enforce the laws of the State of Nevada and the regulations of the Henderson Police

16   Department encouraged and caused constitutional violations.(Doc. 8, ¶43) Therefore, Plaintiff

17   has specifically alleged that Chief White was unconstitutionally inactive in the training,

18   supervision, or control of his subordinates, has acquiesced in the constitutional deprivations of

19   Mr. Brooks unlawful arrest and that such conduct has demonstrated a reckless or callous

20   indifference to the rights of Plaintiff. Consequently, Plaintiff has alleged a viable theory of

21   recovery against Chief White and Defendant's Motion should be denied because Defendant's

22   argument concerning White's lack of personal participation misapprehends the law of this

23   jurisdiction.

24   . . .

25   . . .

26   **F.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

27   Qualified Immunity is an affirmative defense, therefore the Defendant's bear the burden of

28   proof. Saucier v. Katz, 533 U.S. 194 (2001).  In evaluating the issue of qualified immunity, the

1   court follows a two-part test: (1) whether the facts alleged "show [that] the officer[s'] conduct

2   violated a constitutional right"; and (2) whether the constitutional right in question was "clearly

3   established" such that "it would be clear to a reasonable officer that his conduct was unlawful in

4   the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-02 (2001); *See also*

5   modifications to Saucier following Pearson v. Callahan, 555 U.S. 223 (2009).

6       The test for qualified immunity is objective. The defendant's actual purpose or state of

7   mind is not material. Whether rights were "clearly established" at the relevant time is determined

8   in most instances by looking at controlling published court decisions as of that time. United

9   States v. Lanier, 520 U.S.259, 269-71 (1997). It is not necessary, however, for the plaintiff to

10   show a published decision establishing the rights in question under precisely the same

11   circumstances as those presented in the case in question.  See, Anderson v. Romero, 72 F.3d

12   518, 526-27 (7th Cir.1995);  Buonocore v. Harris, 65 F.3d 347, 356-57 (4th Cir.1995). To rule

13   that until the Supreme Court has spoken, no right of litigants in this circuit can be deemed

14   established before we have decided the issue would discourage anyone from being the first to

15   bring a damages suit in this court; he would be certain to be unable to obtain any damages.

16   Burgess v. Lowery, 201 F.3d 942 (7th Cir. 2000).

17       Officers have no "discretion" to violate the Constitutional rights of citizens. Owen v. City

18   of Independence, Mo., 445 U.S. 622 (1980). A Defendant is only entitled to qualified immunity if

19   the Defendant did not violate "clearly established rights" at the time of the conduct in question.

20   Harlow v. Fitzgerald, 457 U.S. 800, 817-818(1982). *See*,  Mattos v. Agarano, 661 F.3d 433 (9th

21   Cir. 2011)(holding that the law must be well settled).

22       Additionally, the right to be free from an arrest which is not supported by probable cause

23   was clearly established at the time of Mr. Brooks' arrest. Morgan v. Woessner, 997 F.2d 1244

24   (9th Cir. 1993).  Because there existed published opinions prohibiting arrests not based upon

25   probable before the arrest of Mr. Brooks, any reasonable officer would have been aware that

26   arrests not based upon probable cause are unlawful.  Moreover, in § 1983 cases, the existence

27   of probable cause is generally a question of fact to be submitted to a jury. McKenzie v. Lamb,

28   738 F.2d 1005, 1008 (9th Cir. 1984).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   In this case, Plaintiff alleges that Ebert's affidavit was comprised of false statements which were made knowingly and intentionally, or with a reckless disregard for the truth by Defendant Ofc. Ebert. (Doc. 8, ¶ 13). Moreover, Defendant Ebert failed to contact all witnesses to the alleged incident. (Doc. 8, ¶ 14). Had Defendant Ebert contact witnesses to the incident he would have learned that four separate individuals, whom were present at the location of the alleged incident, stated that Mr. Brooks did not identify himself as a police officer. (Doc. 8, ¶ 15).

   Additionally, Defendant Ebert falsely claimed, in his affidavit, that Mr. Brooks was not in lawful possession of a police badge. (Doc. 8, ¶ 16). Contrary to Defendant Ebert's false assertion, as a retired police officer, Brooks was lawfully in possession of the subject badge. (Doc. 8, ¶ 17). Likewise, Defendant Ebert falsely stated, in his affidavit, that Henderson police took a badge that was not authorized by the department.  (Doc. 8, ¶ 19). In actuality, the badge was authorized by the Department. (Doc. 8, ¶ 20).

   Defendant Ebert's affidavit also falsely states that the badge was taken from Mr. Brooks during a traffic stop. (Doc. 8, ¶ 21). In actuality the badge was taken from Mr. Brooks approximately fifteen minutes later while Mr. Brooks was eating at a restaurant. (Doc. 8, ¶ 22). Defendant Ebert failed to conduct an independent investigation, or to provide facts or independent professional opinions to support his unilateral conclusions. (Doc. 8, ¶ 23). Additionally, Defendant Ebert, in his affidavit, falsely stated that the fact Brooks was in lawful possession of a Brooks' retired police officer's badge, gave weight to alleged statements over the phone. (Doc. 8, ¶ 18).  Consequently, accepting Plaintiff's allegations as true, Plaintiff was arrested without probable cause. Therefore, Defendants are not entitled to qualified immunity because the right to be free from an arrest which is not supported by probable cause was clearly established at the time of Mr. Brooks's arrest.

. . .

**G.   THIS COURT HAS JURISDICTION OVER PLAINTIFF'S STATE TORT CLAIMS**

   It is within the discretion of the federal district court to hear pendant state tort claims that arise out of a "common nucleus of operative fact". <u>United Mine Workers of America v. Gibbs</u>,

383 U.S. 715, 726 (1966). To return the state tort claims to state court would be a waste of judicial resources. <u>Schneider v. TRW, Inc.</u>, 938 F.2d 986, 994 (9th Cir. 1991).

In this case, Plaintiff specifically invoked the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 (Doc. 8, ¶ 1). § 1367(c) generally provides the circumstances in which a Court may decline to exercise supplemental jurisdiction. Those instances include when (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In the case at hand, the central tenet of Plaintiff's Complaint is an unlawful arrest in violation of the Fourth Amendment. Arising out of that same unlawful arrest are state tort claims for malicious prosecution and false arrest/false imprisonment. Therefore the state tort claims arise of the same nucleus of operative fact. Additionally, none of the circumstances in which a Court may, generally, decline to exercise supplemental jurisdiction exist in this matter because claims for malicious prosecution and  false arrest/false imprisonment are well-settled in Nevada and do not involve novel or complex issue of State law; Plaintiff's state claims do not substantially predominate over his § 1983 claims; the Plaintiff has viable claims under § 1983, and there do not exist, nor has Defendant alleged, that there exist any exceptional circumstances or compelling reasons to decline jurisdiction.

On the contrary, the basis for Defendants argument concerning lack of supplemental jurisdiction is premised upon the Court's dismissal of Plaintiff's claims under § 1983. As analyzed above, Plaintiff submits that he has viable claims under § 1983. Therefore, Plaintiff respectfully requests that this Court exercise its supplemental jurisdiction over Plaintiff's state tort claims.

. . .

**1.      Malicious Prosecution**

In Nevada the tort of malicious prosecution has the following elements: (1) Defendant initiated procured the initiation of, or actively participated in the continuation of a criminal

proceeding against plaintiff; (2) Defendant lacked probable cause to commence that proceeding; (3) Defendant acted with malice; (4) the prior proceeding was terminated, and (5) Plaintiff sustained damages. LaMantia v. Redisi, 118 Nev. 27 (2002).

In this case Plaintiff specifally alleged that, Defendants initiated, procured the institution of and actively participated in the continuation of a criminal proceeding against Plaintiff. (Doc. 8, ¶ 48). Defendants lacked probable cause to commence said proceeding. (Doc. 8, ¶ 49). Defendants acted with malice. (Doc. 8, ¶ 50). The criminal proceeding terminated in Plaintiff's favor. (Doc. 8, ¶ 51). Plaintiff suffered injury to his reputation, humiliation, embarrassment, mental suffering, financial damages, and inconvenience, all proximately caused by Defendants' actions. (Doc. 8, ¶ 52). Consequently, Plaintiff has alleged a plausible cause of action against Defendants for malicious prosecution. Therefore, Defendant's Motion should be denied.

### 2.  False Arrest

In Nevada, the tort of false arrest is closely related of the common law tort of false imprisonment. Nau v. Sellman, 104 Nev. 248 (1988); *See also* Nelson v. City of Las Vegas, 99 Nev. 548 (1983)(Analyzing false arrest and false imprisonment holding " A police officer is not liable for false arrest or imprisonment when he acts pursuant to a warrant that is valid on its face. The facially valid warrant provides the legal cause or justification for the arrest, in the same way that an arrest made with probable cause is privileged and not actionable."). Moreover, Nevada's pattern jury instruction for false imprisonment, 6 IT 4, provides that "False imprisonment arising from false arrest occurs when the claimant's liberty is restrained under the probable imminence of force without any legal cause or justification" Id. *See also* Jordan v. State ex. rel. Dept. of Motor Vehicles, 121 Nev. 44 (2005)(holding a false-arrest claimant must show that the actor instigated or effected an unlawful arrest. Similarly, false imprisonment arising from a false arrest occurs when the claimant's liberty is restrained under the probable imminence of force without any legal cause or justification.) *overruled concerning standard of review for a Motion to Dismiss only*

An individual is liable for the tort of false arrest/false imprisonment if: (1) he or she act intending to confine the other or a third person within boundaries fixed by the actor; (2) his or

her acts directly or indirectly results in such a confinement of the other; and (3) the other is conscious of the confinement or is harmed by it. <u>Switzer v. Rivera,</u> 174 F. Supp. 2d 1097, 1110 (D. Nev. 2001).

Here, By unlawfully arresting Mr. Brooks on June 14, 2012**,** Defendants' acts intended to confine Plaintiff within boundaries fixed by Defendants. (Doc. 8, ¶ 57). Defendants' acts directly resulted in confinement of Plaintiff. (Doc. 8, ¶ 58). Plaintiff was conscious of the confinement and were harmed by said confinement. (Doc. 8, ¶ 59). Plaintiff suffered physical injuries and emotional distress, including humiliation, indignity and disgrace. (Doc. 8, ¶ 60). Defendants' conduct of arresting Plaintiff without legal probable cause constitutes false arrest and false imprisonment. (Doc. 8, ¶ 61). As a direct and proximate result of Defendants conduct, Plaintiff has incurred special and general damages (Doc. 8, ¶ 62). Defendants' conduct was committed intentionally, maliciously, and with conscious disregard to the constitutional rights of Plaintiff warranting the imposition of punitive damages. (Doc. 8, ¶ 63). Therefore, Plaintiff has alleged a proper claim for false arrest. Consequently, Defendants' Motion should be denied.

**H.**   **DEFENDANTS DO NOT ENJOY DISCRETIONARY IMMUNITY FOR THE STATE TORTS COMMITTED UPON MR. BROOKS**

As the United States Supreme Court explained when it modified the discretionary immunity test, "**[t]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions** grounded in social, economic, and political policy through the medium of an action in tort" <u>United States v. Gaubert,</u> 499 U.S. 315, 323 (1991)(Emphasis added)(Nevada has adopted the federal "*Gaubert* test" see, <u>Martinez v. Maruszczak,</u> 123 Nev. 433 (2007). Therefore, the discretionary immunity test is rooted in the judiciary's view of its proper role in government.

State tort claims favor a waiver of immunity. <u>Hagblom v. State Director of Motor Vehicles,</u> 93 Nev. 599, 571 P.2d 1172 (1977). Nevada Revised Statute § 41.032 sets forth exceptions to Nevada's general waiver of sovereign immunity. Pursuant to § 41.032(2), no action may be brought against a state officer or employee or any state agency or political subdivision that is "[b]ased upon exercise or performance or the failure to exercise or perform a

1    discretionary function or duty on the part of the State or any of its agencies or political

2    subdivisions or of any officer, employee or immune contractor of any of these, whether or not the

3    discretion involved is abused."

4           The Nevada Supreme Court has held that NRS 41.032 does not provide discretionary

5    immunity from liability in all cases. Williams v. City of North Las Vegas, 91 Nev. 622, 541 P.2d

6    652 (1975). The purpose of Nevada's waiver of sovereign immunity is to "compensate victims of

7    government negligence in circumstances like those in which victims of private negligence would

8    be compensated." Martinez v. Maruszczak, 168 P.3d 720, 727 (Nev. 2007). Further, officers

9    have no "discretion" to violate the Constitutional rights of citizens. See, Owen v. City of

10   Independence, Mo., 445 U.S. 622, 100 S.Ct.1398 (1980).

11          To determine whether immunity for a discretionary act applies, Nevada utilizes a

12   two-part test. First, an act is entitled to discretionary immunity if the decision involved an

13   element of individual judgment or choice. Martinez v. Maruszczak, 168 P.3d 720, 729 (2007).

14   Second, the judgment must be "of the kind that the discretionary function exception was designed

15   to shield," which includes actions "based on considerations of social, economic, or political

16   policy." Id. at 728-29 (quotations omitted).

17           Once the Government has undertaken responsibility for an objective, the execution of

18   that responsibility is not subject to the discretionary function exception. Bear Medicine v. United

19   States, 241 F.3d 1208, 1215 (9th Cir. 2001)(holding that negligence by Bureau of Indian Affairs

20   in supervising and managing safety of logging operation not policy based so as to warrant

21   protection by discretionary function exception)  Similarly, the District of Nevada has

22   . . .

23   . . .

24   determined that defendants' decisions regarding police practices are not the kind of decisions the

25   discretionary function exception was designed to shield. Huff v. N. Las Vegas Police Dep't,

26   2013 U.S. Dist. LEXIS 179683 (D. Nev. Dec. 23, 2013).

27           In this case, Defendants' conduct does satisfy the under the second prong of the test

28   because Defendants' decision to unlawfully arrest Mr. Brooks is not the type of decision the

discretionary function exception was designed to shield because evaluating whether a police officer had probable cause for arrest does not involve judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy. The officers' obligations in this regard are grounded in the Fourth Amendment, not policy decisions from the legislative or executive branches.  The decision to arrest an individual is not an integral part of governmental policy-making or planning. Imposing liability on officers who commit torts will not jeopardize the quality of the governmental process. Further, declining to apply the exception does not usurp the legislative or executive branch's power or responsibility. Defendants' conduct therefore does not fall within § 41.032 and Defendants are not entitled to discretionary immunity.

## I.     PLAINTIFF WILL STIPULATE TO DISMISS DOE DEFENDANTS

Plaintiff is willing to stipulate to dismiss the Doe Defendants. If it is discovered that additional individuals are culpable for the violations of Plaintiff's constitutional rights,  Plaintiff will seek to amend his Complaint accordingly.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

### III.

### CONCLUSION

Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint because when the allegations contained in the Amended Complaint are accepted as true, as is required at the pleading stage, Plaintiff states "plausible" causes of action for individual, municipal, and supervisory liability for the unlawful arrest of Plaintiff. Additionally, this Court may properly exercise supplemental jurisdiction over Plaintiff's state tort claims because those claims arise out of a "common nucleus of operative fact". Lastly, Defendants are entitled to neither qualified immunity, nor discretionary immunity.

DATED this 28th day of July, 2014.

POTTER LAW OFFICES

By   /s/ Cal J. Potter, III, Esq.
CAL J. POTTER, III, ESQ.
Nevada Bar No. 1988
C. J. POTTER, IV, ESQ.
Nevada Bar No. 13225
1125 Shadow Lane
Las Vegas, Nevada 89102
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of POTTER LAW OFFICES, and that, on the 28th day of July, 2014, I filed and served through the CM/ECF electronic filing service a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** as follows:

Nancy D. Savage, Esq.
CITY OF HENDERSON
240 Water Street
Henderson, NV 89015
Ph:   (702) 267-1200
Fax: (702) 267-1201

_____/s/ Jenna Enrico_____
An Employee of POTTER LAW OFFICES