UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ADAM BROOKS, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:14-cv-00374-GMN-GWF |
| vs. ) | |
| ) | **ORDER** |
| CITY OF HENDERSON, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 39), filed by Defendant Joseph W. Ebert ("Defendant"). Plaintiff Adam Brooks ("Plaintiff") filed a Response, (ECF No. 45), and Defendant filed a Reply, (ECF No. 46). For the reasons discussed below, the Court GRANTS Defendant's Motion for Summary Judgment.

**I.    BACKGROUND**

This case arises from Plaintiff's arrest for the impersonation of a police officer in violation of NRS § 199.430. Defendant, a police officer with the Henderson Police Department ("HPD"), was assigned to investigate Plaintiff, a former HPD officer and a licensed bail enforcement agent, following two events that suggested possible violations of NRS § 199.430. (Ex. A to Mot. for Summary J. ("MSJ"), ECF No. 39-1); (Ex. 2 to Resp. at 6, ECF No. 45-2); (Ex. 3 to Resp., ECF No. 45-3).

The first incident, a traffic stop in which Plaintiff was stopped for speeding, occurred on March 11, 2012. (*See* Ex. A-2 to MSJ at 16, ECF No. 39-3). The incident report prepared by the HPD officer involved, Officer Jonathan Bezrutczyk ("Officer Bezrutcyzk"), states that Plaintiff "introduced himself as a retired officer" and "presented an active duty Henderson Police Department flat badge." (*Id.*). Based on the length of Plaintiff's service as a police

officer with the HPD, Officer Bezrutcyzk concluded that Plaintiff "unlawfully retained his flat badge." (*Id.* at 17–18). Another HPD officer later impounded the badge. (*Id.* at 18).

The second incident occurred on October 11, 2011, at a McDonald's restaurant located in Henderson, Nevada. (*See* Ex. A-1 to MSJ ("Aff. for Warrant"), ECF No. 39-2). Although this event took place before the traffic stop, HPD only later became aware of the McDonald's incident because Dave Erickson ("Erickson"), a Senior Investigator for the State of Nevada, Department of Business and Industry, Division of Insurance ("Insurance Division"), reported the incident to HPD on April 3, 2012. (*Id.* at 2). Erickson investigated the incident pursuant to the Insurance Division's regulatory and enforcement authority relating to Plaintiff's bail enforcement license. (*See id.*).

During his investigation, Erickson interviewed the McDonald's employees who witnessed the incident and compiled audio recordings of his interviews. (*Id.* at 2–3). The employees' accounts of the event generally agree that on the day of the incident, several bail agents visited the McDonald's location demanding information about an employee's boyfriend, whom the agents stated was wanted for arrest. (*Id.* at 3–5). While at the restaurant, one of the bail agents spoke on the phone with the McDonald's area manager, Fortunato Balanzar ("Balanzar"). (*Id.* at 3). According to Balanzar, the bail agent identified himself as a "police officer." (*Id.*). Another employee who spoke with the bail agent on the phone "stated that the bail agent never said he was a 'police officer'" but "did make statements that he was an 'officer' cooperating with the police." (*Id.* at 3). No witnesses physically present for the incident stated that the bail agent identified himself as a police officer. (*Id.* at 4).

Defendant reviewed the interviews conducted by Erickson and concluded that, based on video surveillance footage of the incident, the agent who spoke with Balanzar was Plaintiff. (*Id.*). On May 1, 2012, Defendant conducted his own interview of Balanzar, who confirmed his prior statement of events. (*Id.*). Based on his investigation, Defendant prepared an Affidavit for

Warrant referencing both incidents and asserting that probable cause existed to arrest Plaintiff for violation of NRS § 199.430. (*Id.* at 5).  On June 6, 2012, a Warrant of Arrest issued and a Criminal Complaint charging Plaintiff for impersonating a police officer was filed. (Ex. A-3 to MSJ, ECF No. 39-4); (Ex. B to MSJ, ECF No. 39-5).  The charges against Plaintiff were ultimately dismissed pursuant to a plea agreement. (Ex. B to MSJ at 6).

Plaintiff filed his original Complaint on March 12, 2014, alleging: (1) violation of civil rights pursuant to 42 U.S.C. § 1983; (2) municipal liability pursuant to *Monell*; (3) supervisory liability pursuant to 42 U.S.C. § 1983; (4) state law malicious prosecution; and (5) state law false arrest. (Compl. ¶¶ 26–64, ECF No. 1).  Plaintiff subsequently filed his Amended Complaint on June 11, 2014. (*See* Am. Compl., ECF No. 8).  The instant Motion seeks summary judgment on the basis of qualified immunity regarding Plaintiff's only surviving claim, § 1983 liability against Defendant for submitting the Affidavit for Warrant in violation of Plaintiff's Fourth Amendment rights. (*See* MSJ at 39).

## II.   LEGAL STANDARD

### A.   Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### B. Qualified Immunity

Qualified immunity protects defendants "from suit" and is not "a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). The qualified immunity test is a two-pronged inquiry in which courts must consider whether the facts alleged "make out a violation of a constitutional right" and whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 816 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The "relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 194–95; *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). A court may consider the two prongs of the qualified immunity inquiry in any order it pleases. *Pearson*, 555 U.S. at 234, 239.

Under the first prong, courts consider whether the alleged facts, taken in the light most favorable to plaintiff, show that defendants' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. In resolving this first inquiry, the court determines whether the alleged facts, taken in the light most favorable to the plaintiff, show that defendants were reasonable in their belief that their conduct did not violate the Constitution. *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003). In other words, even if the defendants' actions did violate the Fourth

Amendment, a "reasonable but mistaken belief that [their] conduct was lawful would result in the grant of qualified immunity." *Id.* Qualified immunity thus "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Under the second prong, the court determines "whether the right was clearly established" and applies an "objective but fact-specific inquiry." *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007); *see Saucier*, 533 U.S. at 202. It is not enough that the general rule is established. *Id.* The critical question is whether "the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Saucier*, 533 U.S. at 202. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* The court's "task is to determine whether the preexisting law provided the defendants with fair warning that their conduct was unlawful." *Elliot–Park v. Manglona*, 592 F.3d 1003, 1008 (9th Cir. 2010).

### III.  DISCUSSION

Plaintiff claims his arrest violated the Fourth Amendment because he was arrested without probable cause. (Resp. 8:8–12, ECF No. 45). Specifically, Plaintiff argues that there was insufficient probable cause to support the issuance of the arrest warrant because Defendant deliberately included materially false statements in the Affidavit for Warrant and omitted other exculpatory evidence and information. (*Id.* 10:5–20). "The Fourth Amendment requires that arrest warrants 'be based upon probable cause, supported by Oath or affirmation." *Katrina v. Fletcher*, 522 U.S. 118, 129 (1997) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 (1975)). Probable cause exists where the "facts and circumstances [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing and offense." *Gerstein*, 420 U.S. at 111. Where an arrest is made pursuant to a warrant, the arrest violates the Fourth

Amendment if "a reasonably well-trained officer in [a defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345.

Where, as here, a plaintiff claims that an arrest warrant was procured through deception, "the plaintiff must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). Whether a false or omitted statement was "material" to the finding of probable cause is a question of law. *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004). To determine the materiality of omitted facts, a court must first consider "whether the affidavit, once corrected and supplemented, establishes probable cause." *Bravo*, 665 F.3d at 1084. "Whether the alleged judicial deception was brought about by material false statements or omissions is of no consequence." *Liston v. City of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997). "If probable cause remains after amendment, then no constitutional error has occurred." *Bravo*, 665 F.3d at 1084.

Plaintiff asserts that the arrest warrant includes the following falsehoods: (1) the warrant suggests that Plaintiff was not in lawful possession of the police badge, but Plaintiff asserts that "as a retired police officer, [he] was lawfully in possession of the subject badge"; (2) the warrant states that HPD did not authorize the badge, but Plaintiff contends that HPD had authorized the badge; and (3) the warrant states that the badge was taken from Plaintiff at the traffic stop, but according to Plaintiff, "[i]n actuality the badge was taken from [Plaintiff] approximately fifteen minutes later while [Plaintiff] was eating at a restaurant, by threats of force..[sic]" (Resp. 12:13–15). Plaintiff does not argue that the warrant included any false information regarding the McDonald's incident, and the Court finds that a "corrected" Affidavit for Warrant based solely on that event would support probable cause to arrest Plaintiff for

violating NRS § 199.430.[1] *See Smith v. Almada*, 640 F.3d 931, 937–38 (9th Cir. 2011) ("[E]ven if [the officer] falsified and omitted this information (as [the plaintiff] contends), the corrected report and warrant application would still have contained facts sufficient to establish probable cause to arrest [the plaintiff].").

Under NRS § 199.430, it is a gross misdemeanor to

> falsely personate a public officer, civil or military, or a police officer, or a private individual having special authority by law to perform an act affecting the rights or interests of another, or who, without authority shall assume any uniform or badge by which such an officer or person is lawfully distinguished, and in such assumed character shall do any act purporting to be official.

NRS § 199.430. The Affidavit for Warrant prepared by Defendant states that during his investigation of the McDonald's incident, Defendant: reviewed a surveillance video of the incident; listened to interviews of the McDonald's employees and witnesses; and interviewed Balanzar on May 1, 2012. (*See* Aff. for Warrant 3–4). Further, the Affidavit for Warrant states that Balanzar confirmed during both interviews that "the bail agent specifically told him [on the phone] that he was a Henderson Police Officer and threatened to tell his sergeant if Balanzar did not give him the information he was asking for." (*Id.* at 4). Finally, Defendant avers that the surveillance video confirmed that "the only person [Balanzar] could have spoke [sic] with other than [a McDonald's employee] would have been [Plaintiff]." (*Id.*). Based on his investigation, Defendant concluded that "there is probable cause that [Plaintiff] did violate N.R.S. 199.430 Impersonate a Police Officer." (*Id.* at 5).

The Court agrees that "under the totality of the circumstances known to [Defendant], a prudent person would have concluded that there was a fair probability that [Plaintiff] had committed . . . a crime"—namely, that Plaintiff falsely claimed to be a police officer during his

---

[1] Plaintiff points out that none of the witnesses physically present at the McDonald's incident claimed that Plaintiff represented himself as a police officer. (Resp. 8:4–8). However, this fact does not qualify as a material falsehood or omission because the Affidavit for Warrant contains this information. (*See* Aff. for Warrant at 4).

interaction with Balanzar. *United States v. Noster*, 590 F.3d 624, 629–30 (9th Cir. 2009); *see also* NRS § 199.430.  The Court therefore finds no genuine issue of material fact as to the issues that underlie Plaintiff's false arrest claim. *See Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997) ("[W]hen it is not plain that a neutral magistrate would not have issued the warrant, the shield of qualified immunity should not be lost.").  Consequently, Defendant is entitled to qualified immunity, and the Court GRANTS summary judgment in his favor.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 39), is **GRANTED**.

The Clerk shall close the case and enter judgment accordingly.

**DATED** this __28__ day of March, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge